UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VILLA D'ORLEANS CONDOMINIUM                    CIVIL ACTION
ASSOCIATION, INC.

VERSUS                                         NO: 07-5714

PACIFIC INSURANCE COMPANY,                     SECTION: J(2)
LIMITED

**ORDER AND REASONS**

Before the Court is Defendant Pacific Insurance Company, Limited's ("Pacific") **Motion to Exclude Testimony of Plaintiff's Designated Expert, Donald Rauch (Rec. Doc. 14)** and Pacific's **Motion for Summary Judgment (Rec. Doc. 16).** These motions, which are opposed, are set for hearing on May 28, 2008 with oral argument. Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that Pacific's motions should both be denied.

**<u>Background Facts</u>**

Plaintiff brought suit against Pacific for a claim made under its commercial property policy for alleged damage to its condominium complex arising as a result of Hurricane Katrina and/or Rita. Twenty-seven condominium units in the complex were

damaged.   Plaintiff has alleged causes of action for breach of
contract and violations of Louisiana statutory law governing the
policy at issue.   Plaintiff alleges that the damage to its
property was caused by wind, and is therefore a covered loss.

Plaintiff retained Donald Rauch to provide expert testimony
regarding the damage to Plaintiff's condominium complex.   He
generated a 151-page report itemizing the damages.

## Discussion

**A.   Motion for Summary Judgment**

Summary judgment is appropriate if "there is no genuine
issue as to any material fact and the moving party is entitled to
judgment as a matter of law."   Fed. R. Civ. P. 56(c).   The moving
party bears the initial burden of demonstrating the absence of a
genuine issue of material fact. Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986).   If that burden has been met, the non-
moving party must then come forward and establish the specific
material facts in dispute to survive summary judgment.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
588 (1986).

According to Pacific, in paying Plaintiff $639.597.91, net
of the applicable deductible, Plaintiff has been paid the full
amount owed under the terms of its insurance policy for the
covered damages sustained as a result of Hurricane Katrina.   In
fact, Pacific argues that once certain amounts not covered under

the policy but included in Rauch's estimate of $898,017.41 are deducted, the amount of Rauch's estimate is actually $581,094.41. As a result, Pacific argues that in paying Plaintiff $639.597.91, Plaintiff has actually been overpaid as Pacific has paid Plaintiff more than the full amount owed under the policy (and therefore Plaintiff is entitled to recover nothing more from Pacific).  As a result, Pacific argues that summary judgment in Pacific's favor, finding that Plaintiff has no breach of contract claim against Pacific, is proper.  Furthermore, Pacific goes on to argue that once the breach of contract claim is eliminated, there can be no claims for extra-contractual damages as Pacific owes no further indemnity obligation under the policy and did not act arbitrarily, capriciously, or without probable cause.

Specifically, Pacific argues that the estimate prepared by Rauch totaling $898,017.41 improperly includes four amounts, which are detailed below.  Plaintiff responds that Pacific is not entitled to all of the deductions it seeks.

**1.   Markup for Overhead and Profit**

First, Pacific argues that Rauch's estimate includes markup for overhead and profit at the rate of 31%, totaling $203,811.84. However, Plaintiff's general contractor who actually performed the work charged nothing for overhead and only 10% for profit,

which totaled only $44,275.11.[1]  Under the terms of the policy,
Plaintiff can recover no more than what it actually paid to
repair the covered damage.[2]  Therefore, according to Pacific,
Rauch's estimate should be reduced by $159,536.73 to account for
the overhead and profit not paid by Plaintiff.

In opposition, Plaintiff states that the clause in the
policy to which Pacific refers does not apply as only some 44% of
the damage was repaired by Plaintiff's contractor.[3]  Furthermore,
Plaintiff could complete only some 55% of the work for the
insurance money paid by Pacific.  Plaintiff argues that it is not
bound by the contractor's miscalculations in its claims against
Pacific "for the simple reason that Plaintiff's contract with

---

[1]  The total repair estimate submitted by the general
contractor who performed the work was $487,275.11.  Pacific
states that it paid the claim based on the contractor's estimate
as well as the invoices for covered damage of Plaintiff's trade-
specific contractors.

[2]  See Exhibit A to Pacific's motion––Policy, Building and
Personal Coverage Form, Page 13 of 13, Bates labeled page Policy
27 which provides in pertinent part:

    3.   Replacement Cost

        . . . .

    e.   We will not pay more for loss or damage on a
        replacement cost basis than the least of . . .

        (3)  The amount actually spent that is necessary
            to repair or replace the lost or damaged
            property.

[3]  Plaintiff states that after completing only 44% of the
work, the contractor stopped work never to return.

4

Pacific is to make it whole under the terms of the policy."

Plaintiff argues that because the entirety of the damaged property was not repaired, clause (e)(3) of the Replacement Cost provision cited by Pacific does not apply.  "The amount actually spent that is necessary to repair or replace the lost or damaged property" is not yet determined because repairs and replacements have not been completed and could not be completed based on the payments made by Pacific.  Instead, clause (e)(2) applies, which provides:

> 3.  Replacement Cost
>
>     . . . .
>
> e.  We will not pay more for loss or damage on a
>     replacement cost basis than the least of . . .
>
> > (2)   <u>The cost to replace the lost or damaged</u>
> >       <u>property with other property:</u>
> >
> > > (a)   <u>Of comparable material and quality;</u>
> > >
> > > (b)   <u>Used for the same purpose; or</u>
> >
> > (3)   The amount actually spent that is necessary
> >       to repair or replace the lost or damaged
> >       property.

(emphasis added).  Rauch's estimate is what Plaintiff argues is required to <u>completely</u> repair or replace the damaged property. As such, Plaintiff argues that Pacific's contract obligations to Plaintiff remain open and summary judgment is improper on this prong of Pacific's argument.

This Court finds that since the repair work is not yet

5

complete, the amount "actually spent" or, more properly, that must be spent to repair the damaged property remains a genuine issue of material fact sufficient to preclude summary judgment.

**2.   Mold Repair**

Second, Pacific argues that Rauch's estimate includes $73,305.59 as a base charge for anti-microbial treatments and mold remediation.  However, according to Pacific, the policy limits Plaintiff's recovery for these repairs to $15,000 under the policy's "Fungus" Endorsement.[4]  Therefore, according to Pacific, Rauch's estimate should be reduced by an additional $58,305.59 to account for the mold repair not recoverable under the policy.

In opposition, Plaintiff argues that Pacific provides no support for the $73,305.59 total, as it fails to cite specifically how it obtains this figure in Rauch's estimate, and even if it had, Pacific's reading of the Fungus Endorsement is not correct based on a reading of the entire policy.

As to the total itself, Plaintiff points to two items in Rauch's report that expressly comprise "mold remediation" and

---

[4]  See Exhibit A to Pacific's motion—Policy, "Fungus" Endorsement, Bates labeled pages Policy 46-47 which provides in pertinent part:

> B.   Coverage for loss associated with fungus, mold, mildew, wet or dry rot, bacteria or virus is limited to $15,000.00.

which total only $15,000.[5]  And as for the $15,000 limit,
Plaintiff asserts that this limit applies on a per-building basis
to each of the five buildings whose damages exceed the deductible
amount, for a total of $75,000.

This Court finds that there is an unresolved factual issue
as to Pacific's calculated amount for anti-microbial treatment,
as Pacific fails to show the basis of the number or how it was
calculated.  As such, summary judgment is precluded on this
issue.

**3.   Replacement of Appliances**

Third, Rauch's estimate includes $20,534.52 (not including
9% sales tax also included in Rauch's estimate) for replacement
of appliances such as dishwashers, ranges, and refrigerators in
the 27 damaged condominium units.  The policy covers appliances
owned by the condominium association only.  See Exhibit A to
Pacific's motion--Policy, Building and Personal Property Coverage
Form, Page 1 of 13, Bates labeled Policy 15 which provides in
pertinent part:

> 1.   Covered Property
>
> . . . .

---

[5] Plaintiff does point out that some other items in the
estimate refer to priming of walls with paint that happens to
have anti-microbial qualities.  However, Plaintiff argues that
since priming of walls with some manner of paint would be
necessary in any case, Pacific is incorrect if it seeks to
attribute all costs of priming walls to this category.

> a.  Building, meaning the building or structure
> described in the Declarations, including:
>
>                    . . . .
>
>     (4)  Personal Property owed by you that is used to
>          maintain or service the building or structure
>          or its premises, including:
>
>          (d)  Appliances used for refrigerating,
>               ventilating, cooking, dishwashing or
>               laundering;

The appliances in the units, however, are owned by the individual

unit owners, not the association.  Therefore, according to

Pacific, Rauch's estimate should be reduced by an additional

$20,534.52 because replacement of these appliances is not covered

by the policy.

In opposition, Plaintiff argues that appliances that have

become immovables by operation of property law are explicitly

covered by the same section of the policy cited by Pacific, and

those appliances that are movable are also covered because they

remain in the "care, custody, or control" of the association for

purposes of insurance under the Louisiana Condominium Law.

Specifically, Plaintiff cites the "Covered Property"

provision of the policy which also includes:

> c.  Personal Property of Others that is:
>
>     (1)  In your care, custody, or control; and
>
>     (2)  Located in or on the building described in
>          the Declarations or in the open (or a
>          vehicle) within 100 feet of the described
>          premises.

8

Plaintiff reads this provision and the one cited by Pacific above to mean that all appliances that would reasonably be deemed part of the building by virtue of something other than casual linkage are covered so that an ordinary person would consider them component parts of the unit.  See La. Civ. Code article 466 which states that "Other things are considered to be permanently attached to an immovable if they cannot be removed without substantial damage to themselves or to the immovable or if, according to prevailing notions in society, they are considered to be component parts of an immovable."

Additionally, Plaintiff argues that coverage of most all other appliances is mandated under Louisiana's Condominium Law. Coverage for all appliances that are not "improvements and betterments" placed by the unit owner is mandated by La. R.S. 9:1123.112(A) which provides in pertinent part:

> A.  . . . [T]he association shall maintain, to the extent reasonably available:
>
>> (1)   Property insurance on the common elements and units, exclusive of improvements and betterments installed in units by unit owners, insuring against all risks of direct physical loss commonly insured against.

Plaintiff argues that this provision places all nonbetterment appliances within the association's "care, custody, or control" for purposes of insurance, and thus within part c.(1) of the policy's coverage definition quoted above.  As such, Rauch properly included the value of the appliances, with the exception

9

of any "betterments," in his estimate of damages.

This Court finds that Pacific has failed to show that there are no issues of fact as to appliance coverage and therefore summary judgment is precluded.

### 4. Deductible

Finally, Pacific argues that Rauch's estimate does not account for the applicable deductible under the policy, which Pacific calculates to be $78,546.16. The policy states that the deductible is 2% of the total scheduled insured values of the item(s) insured that have sustained loss or damage. Pacific then calculates 2% of the value of each building in the complex that sustained damage, summing these totals, and arriving at $78,546.16, which must also, according to Pacific, be subtracted from Rauch's estimate.

In opposition, Plaintiff disagrees with Pacific's calculation of the deductible,[6] and questions whether the method of calculating a deductible is properly the subject of a motion for summary judgment.

---

[6] Plaintiff does however agree that a percentage deductible applies. Plaintiff's calculation leads to a total deductible amount of $42,377.26. Plaintiff excludes those deductibles (for five buildings total) that do not apply because the damages to those buildings were not sufficient to overcome the deductible (which is 2% of the total scheduled insured building's value). Instead, Plaintiff argues that the minimal damages to those buildings, not the larger deductibles, should be subtracted from the total of the damages recoverable under the policy.

This Court finds that the difference between the calculations represents a genuine issue of material fact. Besides, Pacific has failed to show that the proper method to calculate a deductible is subject to determination on a motion for partial summary judgment.

### 5.    Extra-contractual Claims

Finally, because this Court determines that summary judgment is improper as to Plaintiff's breach of contract claim, summary judgment is also improper as to Plaintiff's extra-contractual claims considering that the only basis set forth by Pacific as to the extra-contractual claims stems from its argument that Plaintiff has no breach of contract claim against Pacific.

### B.    Motion to Exclude

Pacific also seeks to exclude the testimony of Rauch altogether pursuant to Federal Rules of Evidence 702 and <u>Daubert</u> requirements.  Pacific first argues that Rauch's "report" is "nothing more than a 151-page estimate of damages."

In opposition, Plaintiff argues that the manner in which Rauch's report is expressed, primarily as numbers and calculations, is the most succinct statement of Rauch's opinions. According to Plaintiff, "[i]f one tried to somehow convert each of the numbers and calculations into sentence format, no clarity would be gained--only confusion and unwieldy size would be added."  Plaintiff states, the essence of Rauch's opinions is the

cost of repair, item by item, of the damage done in the hurricane, and this is what Rauch has given Pacific.

Second, Pacific argues that the report fails to comply with Federal Rules of Civil Procedure 26(a)(2)(B) which requires a complete statement of all opinions the witness will express and the basis and reasons for them, a list of cases in which Rauch has testified in the previous four years, as well as a statement of the compensation to be paid for Rauch's study and testimony. Pacific argues that failure to produce this information has prejudiced Pacific in that it cannot evaluate the report, prepare its defenses, or cross-examine witnesses. As the discovery deadline is May 30, 2008, Pacific argues that it cannot prepare itself to depose Rauch based on its deficient report.

In opposition, Plaintiff argues that the formal requirements of Rule 26 are adequately met. Pacific was provided with a *curriculum vitae* of Rauch's qualifications. While this *curriculum vitae* did omit the one instance in which Rauch has testified (by deposition) and the bill for his estimate in the instant case, Plaintiff argues that these minor omissions could have been corrected if Pacific had simply requested the materials before now. Plaintiff indicates that after being forwarded Rauch's report over one month ago, Pacific has never sought his bill or any further information from him. Nor has it ever expressed any dissatisfaction with his report or any desire to

depose him.  Furthermore, discovery is still open.  As a result, the reality of Pacific's behavior does not support any "contentions Pacific now seeks to make about prejudice or inability to prepare a defense."

Finally, according to Pacific, no basis is provided to support Rauch's opinion that everything in his estimate is wind damage, and the report does not eliminate other possible causes.

Plaintiff responds that the attribution to wind damage is well-founded for the simple reason that there has never been an issue in this matter concerning allocation of the itemized damage to anything other than wind and rain.[7]  In fact, Pacific's own adjuster's report produced by Pacific in discovery contains language under a subheading entitled "CAUSE OF LOSS" which reads, "This is a windstorm loss . . . occurring on August 29, 2005."  Additionally, Pacific produced an email among its adjusters which states that "[d]amage is all wind related with ensuing water damage to the interior from rain that accompanied the hurricane.  There is no flooding damage at this location."  Finally, in its Request for Production No. 18, Plaintiff sought documents reflecting a wind versus flood percentage if relied on by Pacific.  Pacific's response was that "Pacific is not aware of

---

[7]  While there was some minor flood damage, Plaintiff states that it is not in any way involved with the present claim.  In fact, that claim settled for approximately $5,000 and was limited to one unit and to a community room.

13

any responsive documents comparing wind and flood damage by percentage with respect to Plaintiff's claim because Pacific did not employ any such method for adjusting Plaintiff's claim."

As such, Plaintiff argues that in seeking expert reports, a plaintiff is not charged with creating issues and then going to the expense of obtaining reports on imagined issues that do not exist.  No question as to allocation of wind/rain versus flooding has ever existed in the instant case, and it was not incumbent upon Rauch to make up and address a new and different issue in his report.

This Court finds that for the reasons outlined by Plaintiff, Pacific's motion to exclude Rauch's testimony should be denied. Furthermore, whatever deficiencies exist in Rauch's report and testimony, they do not so offend the Daubert reliability standard so as to preclude their admission.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [allegedly] shaky but admissible evidence." Daubert v. Merrell Dow Pharms., 509 U.S. 579, 596 (U.S. 1993).  Accordingly,

IT IS ORDERED that Pacific's **Motion to Exclude Testimony of Plaintiff's Designated Expert, Donald Rauch (Rec. Doc. 14)** is hereby **DENIED.**

IT IS FURTHER ORDERED that Pacific's **Motion for Summary**

14

**Judgment (Rec. Doc. 16)** is hereby **DENIED.**

**IT IS FURTHER ORDERED** that oral argument on these two motions, set for May 28, 2008, is hereby **CANCELLED.**

New Orleans, Louisiana, this 22nd day of May, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE